Case 4:23-cv-00204 Document 17 Filed on 11/21/23 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
November 21, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **THALIA MARIE VILLALVA,** | § § | |
| **Plaintiff,** | § § | |
| v. | § § | **CIVIL ACTION NO. 4:23-CV-204** |
| | § § | |
| **KILOLO KIJAKAZI,** *Commissioner of Social Security Administration*, | § § § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Thalia Marie Villalva ("Plaintiff") filed this lawsuit against Defendant Kilolo Kijakazi ("Commissioner") seeking review of the denial of benefits under Title II and XVI of the Social Security Act. (Dkt. No. 1.) Pending before the Court are the parties' cross-motions for summary judgment.[1] (Dkt. Nos. 13, 14.) Based on the briefing, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (Dkt. No. 13) be **DENIED**, Commissioner's Motion for Summary Judgment (Dkt. No. 14) be **GRANTED**, and the action be **DISMISSED** with prejudice.

### I. BACKGROUND

Plaintiff is a 20-year-old female who received supplemental security income benefits based on disability as a child. (Dkt. No. 5-3 at 15-17.) Once Plaintiff reached age eighteen, eligibility for

---

[1] On April 21, 2023, the District Judge referred the entire case to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No 7.)

disability was reassessed[2] and it was determined that Plaintiff was no longer disabled on November 15, 2021. (*Id.* at 15.) A state agency disability hearing officer upheld the determination. (*Id.*) On April 28, 2022, Plaintiff requested a hearing before Administrative Law Judge Kimani Eason (the "ALJ"). (*Id.*) The ALJ held a hearing on August 31, 2022, where Plaintiff was represented by Counsel. (*Id.*) Plaintiff testified at the hearing, as did Tammy Villalva, Plaintiff's mom, and Tammie Alfaro, vocational expert ("VE"). (*Id.* at 36-76.) On September 28, 2022, the ALJ determined that Plaintiff's disability ended on November 15, 2021, finding Plaintiff not disabled. (*Id.* at 28.)[3] Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review. (*Id.* at 2-4.) Plaintiff then appealed to the district court.

Step One of the evaluation process is not used in redetermining disability at age eighteen. (*Id.* at 16.) At Step Two, the ALJ found Plaintiff has the following severe impairments: "migraine without aura, hemangioma of the distal femur, congenital malformation of the peripheral vascular system, fibroadipose vascular anomaly ("FAVA") of the left lower extremity, obesity, and anxiety disorder." (*Id.* at 17.) At Step Three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and

---

[2] "Section 1614(a)(3)(H) of the Social Security Act [], provides that individuals who are eligible for supplemental security income benefits as children (individuals who have not attained age 18) for the month preceding the month in which they attain age 18, must have their disability redetermined under the rules for disability used for adults." (Dkt. No. 5-3 at 16.)

[3] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

416.926)." (*Id.* at 18.) The ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except: the claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel and crouch, but can never crawl. The claimant can never work at unprotected heights or around moving mechanical parts. The claimant can never operate heavy equipment or drive a motor vehicle for commercial purposes. The claimant must avoid all exposure to open flames and open bodies of water. The claimant can tolerate that amount of pulmonary irritants found in a normal office environment, but must otherwise avoid all exposure to fumes, odors, dust, gases, smoke, chemicals and poorly ventilated areas. The claimant must avoid all exposure to extreme heat, which is defined as temperatures 90 degrees Fahrenheit or above, as well as industrial vibrations. The claimant can tolerate normal office lighting, but must avoid all exposure to bright lights such as high beams, spotlights, flashing lights and working outside in direct sunlight. The claimant can tolerate a moderate level of noise such as noise found in an office, department store, or grocery store. Mentally, the claimant can remember, understand and carryout both simple and detailed instructions in a work environment not requiring a specific production rate, such as assembly line work, or hourly quotas.

(*Id.* at 21.) At Step Four, the ALJ found that Plaintiff does not have any past relevant work. (*Id.* at 27.) Finally, at Step Five, the ALJ determined that jobs exist based on Plaintiff's age, education, work experience, and RFC. (*Id.*) As such, the ALJ determined that Plaintiff's disability ended on November 15, 2021 and Plaintiff is not eligible for supplemental security income. (*Id.* at 28.)

The ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). On January 17, 2023, Plaintiff filed this civil action under 42 U.S.C. §§ 405(g). (Dkt. No. 1.) On appeal, Plaintiff argues that the ALJ's decision was not supported by the substantial evidence of record. (Dkt. No. 13 at 3.)

## II. STANDARD OF REVIEW

The court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the

evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

### III. DISCUSSION

Plaintiff asserts four points of error. First, Plaintiff argues that the ALJ interposed his own medical judgment to determine the vocationally limiting effects of the Plaintiff's severe mental impairment. (Dkt. No. 13 at 10.) Second, Plaintiff argues that the ALJ failed to properly consider the Plaintiff's migraine episodes. (*Id.* at 13.) Third, Plaintiff contends that the ALJ failed to consider the Plaintiff's absences from school in determining her ability to maintain employment. (*Id.* at 15.) Fourth, Plaintiff argues that the ALJ failed to consider the Plaintiff's need for leg elevation. (*Id.* at 16.) Commissioner argues that substantial evidence and relevant legal standards support the RFC assessment. (Dkt. No. 15 at 2.)

#### A. The ALJ's RFC determination regarding Plaintiff's severe mental impairment[4] is supported by substantial evidence

Plaintiff claims that the ALJ erred in determining Plaintiff's RFC by not referring "to any evidence which would support his opinion as to [] Plaintiff's mental limitations." (Dkt. No. 13 at 11.) Specifically, Plaintiff asserts that the record does not contain medical opinions that describe the effect that Plaintiff's anxiety disorder has on work-related activities and that the ALJ fails to "refer to any medical opinion, medical evidence, or non-medical evidence to establish the effect of Plaintiff's anxiety disorder upon her ability to perform basic work activities." (Dkt. No. 13 at 10.) The Commissioner contends that "there is substantial evidence to support the ALJ's mental RFC finding" because the "ALJ applied the special technique to assess Plaintiff's functional limitations." (Dkt. No. 15 at 4.)

---

[4] The severe mental impairment referenced in this section is an anxiety disorder.

The ALJ is responsible for determining a claimant's RFC—the "most the claimant can still do despite his [or her] physical and mental limitations"—before Step Four in the disability evaluation process. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC is "determined by combining a medical assessment of [a claimant's] impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988). The Plaintiff bears the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Once the ALJ "identifies an impairment that could reasonably produce the claimed symptom" by evaluating the medical evidence, the inquiry turns to the severity. *Gonzalez v. Kijakazi*, No. CV 1:21-40, 2022 WL 317679, at *4 (S.D. Tex. Jan. 6, 2022), *report and recommendation adopted*, No. 1:21-CV-040, 2022 WL 313907 (S.D. Tex. Feb. 2, 2022). Severity is evaluated by the "intensity, persistence, and limiting effects of the individual's symptoms on their ability to do basic work activities." *Id.* (quoting SSR 96-7p.) (internal quotations omitted). To complete this evaluation, the ALJ reviews "objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." *Id.* (citing SSR 96-7p.) The ALJ maintains discretion in determining the weight given to the medical evidence and is "not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Fleming v. Saul*, No. 19-CV-701, 2020 WL 4601669, at *4 (W.D. Tex. Aug. 10, 2020). Nevertheless, "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based . . . on his own unsupported opinion as to the limitations presented by the applicant's medical

conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

Here, with regard to Plaintiff's mental impairment, the ALJ found that Plaintiff has an RFC to "remember, understand and carryout both simple and detailed instructions in a work environment not requiring a specific production rate, such as assembly line work, or hourly quotas." (Dkt. No. 5-3 at 21.) The ALJ notes that Plaintiff was given additional environmental and mental limitations after considering "[Plaintiff's] testimony and physician reports regarding fatigue, anxiety, and migraine triggers." (*Id.* at 26.) The ALJ evaluated the severity of Plaintiff's anxiety disorder by taking into account her ability to understand, remember, and apply information, her interactions with others, her ability to concentrate, persist, and maintain pace, and her ability to adapt and manage herself. (Dkt. No. 5-3 at 20.)

Specifically, the ALJ determined that Plaintiff has a mild limitation in understanding, remembering, and applying information after accounting for her ability to "watch television, prepare simple meals, perform light household chores, use a computer to shop, assist in the care for her cat." (*Id.*) Plaintiff has stated that she is able to engage in hobbies on a weekly basis and only had "a little trouble reading and doing homework." (*Id.*) (internal quotations omitted). Next, the ALJ determined that Plaintiff has no limitation with interacting with others because Plaintiff has stated that she can spend time with others in person, has denied any problems getting along with others, was involved in the National Honor Society, and is cooperative and respectful with adults. (*Id.*) Furthermore, the ALJ determined that Plaintiff has a moderate limitation with regard to concentrating, persisting, and maintaining pace because Plaintiff can "count change and use a checkbook and money orders" and she is "able to follow written and spoken instructions, but noted she was a visual learner." (*Id.*) A school report stated that Plaintiff could maintain attention to tasks

but required accommodations. (*Id.*) Also, the ALJ determined that Plaintiff has a mild limitation for adapting and managing herself because on October 21, 2021, progress notes from Texas Children's Hospital reported that Plaintiff was "alert, and oriented to person, place, and time" and an ARD report noted that Plaintiff easily adjusted to new situations and her "behavioral, social and emotional skills were within age/grade expectations." (*Id.*)

The ALJ has considered Plaintiff's testimony, Plaintiff's ability to perform daily activities, medical reports, and ARD reports to determine the severity of Plaintiff's mental impairment. (*Id.*) As such, the ALJ's RFC determination regarding Plaintiff's mental impairment is supported by substantial evidence.

### B. The ALJ properly considered Plaintiff's migraine episodes

Plaintiff asserts that the ALJ "failed to connect the limitations included in his [RFC] determination with Plaintiff's migraine episodes" and "failed to consider the absences from the work setting which would be caused by treating migraine episodes."[5] (Dkt. No. 13 at 15.) The Commissioner argues that the ALJ properly evaluated and accommodated for Plaintiff's migraine limitations in the RFC determination. (Dkt. No. 15 at 5.)

The ALJ is responsible for determining a claimant's RFC—the "most the claimant can still do despite his [or her] physical and mental limitations"—before Step Four in the disability evaluation process. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC is "determined by combining a medical assessment of [a claimant's] impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988). The Plaintiff bears the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan v. Shalala*, 38

---

[5] The Court will address the issue regarding absences in the next section.

F.3d 232, 237 (5th Cir. 1994). Once the ALJ "identifies an impairment that could reasonably produce the claimed symptom" by evaluating the medical evidence, the inquiry turns to the severity. *Gonzalez v. Kijakazi*, No. CV 1:21-40, 2022 WL 317679, at *4 (S.D. Tex. Jan. 6, 2022), *report and recommendation adopted*, No. 1:21-CV-040, 2022 WL 313907 (S.D. Tex. Feb. 2, 2022). Severity is evaluated by the "intensity, persistence, and limiting effects of the individual's symptoms on their ability to do basic work activities." *Id.* (quoting SSR 96-7p.) (internal quotations omitted). To complete this evaluation, the ALJ will review "objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." *Id.* (citing SSR 96-7p.) The ALJ maintains discretion in determining the weight given to the medical evidence and is "not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Fleming v. Saul*, No. 19-CV-701, 2020 WL 4601669, at *4 (W.D. Tex. Aug. 10, 2020). Nevertheless, "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based . . . on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

Here, the ALJ found that Plaintiff has an RFC to "tolerate normal office lighting, but must avoid all exposure to bright lights such as high beams, spotlights, flashing lights and working outside in direct sunlight [and can] tolerate a moderate level of noise such as noise found in an office, department store, or grocery store." (Dkt. No. 5-3 at 21.) The record supports this finding, including medical opinions of physicians and Plaintiff's testimony. (Dkt. No. 5-3 at 22-26.) State

Agency reviewing physician, Jeanine Kwun, M.D. opined that Plaintiff "should avoid concentrated exposure to noise." (*Id.* at 26.) The ALJ noted that he also considered reports by Plaintiff's physician regarding "fatigue, anxiety, and migraine triggers" in determining her RFC. (*Id.*) Plaintiff herself claims that her migraines are triggered by lights and sounds and sometimes she lies down in a dark room when she experiences a migraine. (*Id.* at 22.) However, it was noted in Plaintiff's progress report on October 21, 2021 that Plaintiff had "poor compliance with her morning and afternoon pain medication doses [but] [d]espite her headaches, [she] was functional in school and denied any sleep interference." (*Id.* at 24.) Although Plaintiff experiences migraines, Plaintiff has admitted to being able to perform "fairly normal activities of daily living." (*Id.* at 25.)

The evidence in the record supports the ALJ's limitations in the RFC determination because it is supported by physician opinions and Plaintiff's testimony. *Adamek v. Comm'r of Soc. Sec.*, No. 521CV00084RWSJBB, 2022 WL 4587846, *3 (E.D. Tex. Sept. 29, 2022) ("Plaintiff avoids bright or flickering lights and environmental extremes when experiencing migraines. Accordingly, the ALJ found it appropriate to inject limitations to the final RFC concerning constant work in such environs that might expose Plaintiff to such conditions."). The ALJ can also consider inconsistencies between Plaintiff's testimony about her migraine limitations and daily activities in determining Plaintiff's RFC. *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) ("[T]he inconsistencies between Reyes' testimony about his limitations and his daily activities were quite relevant in evaluating his credibility."). As such, the ALJ's RFC determination regarding Plaintiff's migraines is supported by substantial evidence.

### C. The ALJ properly considered Plaintiff's absences from school in determining her ability to maintain employment

Plaintiff argues that the ALJ failed to consider Plaintiff's school absences, her need to lie down in a dark room for an hour when experiencing a migraine, and her physical therapy for one

hour twice a week in determining her ability to be present at in a work setting. (Dkt. No. 13 at 16.) The Commissioner contends that the ALJ properly considered Plaintiff's absences from school. (Dkt. No. 15 at 9.)

"[A] condition that does not allow a person to work on a regular basis precludes substantial gainful activity." *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002) (quoting *Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir. 1990)) (internal quotations omitted). "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms [and without] such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Perez*, 415 F.3d at 465 (quoting *Frank v. Barnhart*, 326 F.3d 618 (5th Cir.2003)) (internal quotations omitted). "Testimony about 'good days and bad days' does not necessarily establish impairment sufficient to require an explicit finding on maintaining employment." *Quintanilla v. Astrue*, 619 F. Supp. 2d 306, 324 (S.D. Tex. 2008) (quoting *Perez*, 415 F.3d at 465). "[A] claimant must allege more than mere pain variation to trigger *Watson's* requirement for a finding on ability to maintain employment." *Heck v. Colvin*, 674 F. App'x 411, 416 (5th Cir. 2017).

Here, the ALJ has considered Plaintiff's absences from school in determining her ability to work. For instance, the ALJ noted that Plaintiff "had a total of 50 absences as of April 18, 2022 [and] the record shows the claimant did not attend school for a while following her February 2021 surgical procedure." (Dkt. No. 5-3 at 25.) Additionally, the ALJ considered Plaintiff's physical health after the surgery that occurred in February 2021 by noting that in January 2022, Plaintiff was feeling and walking well, only had minor restrictions in strenuous physical activity, and was able to fully extend her left knee and flex it at least ninety degrees. (*Id.* at 24.) Furthermore, the ALJ noted that in April 2022, Plaintiff was walking well. (*Id.*) Plaintiff's teacher, Mr. Bentley

expressed that although Plaintiff "experience[ed] fatigue and headaches from bright lights, loud noises and stress, she did not frequently miss school." (*Id.* at 25.)

The ALJ also considered Plaintiff's potential absences from work due to her migraines. In determining Plaintiff's RFC, the ALJ notes that Plaintiff experiences about three headaches a week that can last about one hour, but Plaintiff takes medication that provides relief about five to eight times a month. (Dkt. No. 5-3 at 22.) On October 2, 2021, Phong Luu, M.D., examined Plaintiff for "complaints of headaches lasting for thirty minutes, once to twice a week." (*Id.* at 24.) On October 21, 2021, it was reported that "[d]espite her headaches, [Plaintiff] was functional at school and denied any sleep interference" and the frequency in which she missed school due to headaches had decreased. (*Id.*) Plaintiff also receives Botox injections to help her symptoms "to some extent and the benefits are increasing with continued treatment." (*Id.*) Plaintiff claims that even when the ALJ considers migraine triggers, the ALJ erred by not considering absence from work due to migraines. (Dkt. No. 13 at 14-15.) However, the record is clear that the ALJ has considered potential absences that would occur due to Plaintiff's migraines and has noted that the migraine frequency has decreased over time with treatment.

Furthermore, the ALJ has taken into account Plaintiff's physical therapy appointments. (Dkt. No. 5-3 at 22.) The ALJ noted that "[f]ollowing surgery, [Plaintiff] underwent physical therapy for about a year and continues to attend, twice a week for one hour." (*Id.*) As such, there is substantial evidence to support that the ALJ considered Plaintiff's school absences, her need to lie down in a dark room for an hour when experiencing a migraine, and her physical therapy for one hour twice a week in determining her ability to be present at in a work setting.

### D. The ALJ properly considered Plaintiff's need for leg elevation

Plaintiff argues that the ALJ failed to consider Plaintiff's need for leg elevation because the VE testified that leg elevation three or four days a week is not permitted in the workplace. (Dkt. No. 13 at 16.) The Commissioner claims that the ALJ considered Plaintiff's need for leg elevation by referring to the medical record. (Dkt. No. 15 at 11.)

"The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir.1983). "Subjective complaints of pain must also be corroborated by objective medical evidence." *Id.* (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir.1989)). Hypothetical assumptions presented to a VE that are inconsistent with objective medical evidence can be rendered inconsequential. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) ("Because [the ALJ] found objective medical evidence did not coincide with the hypothetical assumptions posed to the vocational expert, the ALJ reasoned the expert's opinion was immaterial.").

Here, the ALJ considered the medical record in determining Plaintiff's RFC regarding her leg pain and need for elevation. The medical record that the ALJ considered includes a report on January 10, 2022 where Plaintiff was feeling and walking well, only had minor restrictions in strenuous physical activity, and was able to fully extend her left knee and flex at least ninety degrees. (Dkt. No. 5-3 at 24.) Additionally, on April 4, 2022, it was reported that Plaintiff was walking well. (*Id.*) The ALJ also notes that Plaintiff has "admitted to some fairly normal activities of daily living." (*Id.* at 25.) As such, there is substantial evidence to support that the ALJ considered Plaintiff's need for leg elevation because the ALJ relied upon objective medical evidence and Plaintiff's ability to perform activities of daily living in determining her RFC.

## IV.     CONCLUSION

Based on the briefing, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (Dkt. No. 13) be **DENIED**, Commissioner's Motion for Summary Judgment (Dkt. No. 14) be **GRANTED**, and the action be **DISMISSED** with prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on November 21, 2023.

Sam S. Sheldon
United States Magistrate Judge